232 So.2d 613

Ben F. SUTTON et al.

v.

J. L. MOTHERSHEAD.

I Div. 609.

Supreme Court of Alabama.

Feb. 19, 1970.

Rehearing Denied March 19, 1970.

# 368

---

Chason, Stone & Chason, Bay Minette, for appellants.

C. LeNoir Thompson, Bay Minette, for appellee.

MERRILL, Justice.

Appeal from a decree dismissing a bill of complaint seeking to enjoin the foreclosure of a mortgage on the ground that the mortgage was not in default, and dissolving the temporary injunction previously issued.

Appellee Mothershead was a distributor of gasoline, oil and associated products. He sold a filling station and premises to W. D. Countryman in 1959 for $15,640.44. The provision in the mortgage for payment was: "The sum of 1¢ per gallon of gasoline as delivered by the said mortgagee to the said mortgagor with the further provision that the said sum paid shall constitute not less than $50.00 per calendar month during the life of the said mortgage." In 1963, Countryman had fallen behind and another "MORTGAGE DEED WITH POWER OF SALE" was executed between the parties showing a sale price and mortgage in the amount of $19,863.09 with

the identical payment clause which is quoted from the original mortgage.

Contemporaneous with the execution of the 1959 mortgage deed, appellee and Countryman executed the following agreement:

"STATE OF ALABAMA

"BALDWIN COUNTY

"Be IT HEREBY AND HEREINAFTER AGREED between the parties that the said W. D. COUNTRYMAN agrees to handle exclusively oil, gas and associated items of which J. L. Mothershead is the distributor for a period of 20 years or during the life of J. L. Mothershead whichever terminates first. The said agreement is subject to change at the mutual agreement of both parties hereto as to incidental items necessary or advantageous to the said W. D. Countryman.

"WITNESS our hands and seals this the 21st day of April, 1959.

> "/s/ J. L. Mothershead
> "/s/ W. D. Countryman"

This agreement was recorded as were the two mortgage deeds.

In 1967, Countryman had fallen behind in his payments and had quit selling gasoline and was trying, with proferred help from appellee, to find a buyer who would assume the mortgage. In January, 1968, Countryman and his wife conveyed the premises by warranty deed, with survivorship clause, to appellants, husband and wife. The expressed consideration was $10.00 and the deed contained the following provision:

"This deed is subject to and the Grantees herein by the acceptance of the delivery of this deed, do hereby assume and agree to pay the balance due on the debt secured by that certain mortgage dated August 5, 1963, and recorded in Mortgage Book 437 at page 255 from the Grantors herein to J. L. Mothershead."

Sutton talked with both Countryman and Mothershead several times and there was evidence that he agreed for the gasoline pumps to be installed, but after going into possession, he never permitted them to be installed and never handled any gasoline. He merely paid or tried to pay $50.00 per month.

Appellee began advertising the notice of mortgage foreclosure. Appellants filed their bill for injunction to halt the foreclosure, a temporary injunction was issued, and on final hearing, the bill was dismissed and the temporary injunction dissolved.

The sole contention of appellants was, and is, that the mortgage was not in default when they bought the property and that they had paid or tried to pay, by cashiers' checks, the required $50.00 per month. Appellants asked for no accounting and there was no offer in the bill to do equity.

There is no question but that Countryman was behind in his payments and that the mortgage was in default while he was in possession of the property. One of complainants' exhibits is a statement rendered by Mothershead to Countryman in December, 1966, which shows a credit of $150.00 on December 6 and $160.00 on December 30, 1966. The latter payment was made by check and was marked "Rent" but appellee gave Countryman credit for the $310.00 on the note.

Appellant, Ben Sutton, first testified that his attorney had checked the deed and mortgage records before he purchased the property, but his attorney corrected him by stating that appellant did not employ him to examine the title or to prepare the deed, and appellant agreed that his attorney was correct. He later testified that he did not examine the records, but he did see the mortgage from Countryman to appellee, saw the reference to the 1¢ per gallon of gasoline business and that he had seen the agreement between appellee and Countryman concerning 1¢ per gallon or $50.00 per month. He also testified that he told ap-

pellee that he wanted to operate a truck stop on the premises.

Without laboring this opinion with conflicting testimony, it appears to us that after appellants went into possession of the premises, they decided not to sell any gasoline but to try to acquire title to the property by paying only $50.00 per month. It is obvious that this was contrary to the agreement that appellee had had with Countryman. At times, Countryman paid appellee as high as $283.00 per month and from $1,500.00 to $1,700.00 per year. Near the end of Countryman's tenure, he sometimes paid less than $10.00 per month.

A check for $300.00 from Countryman to appellee on December 16, 1967 was marked "Rent Note." Apparently, after Countryman quit selling gasoline and remained on the premises, he was paying rent instead of purchasing the property. There is no dispute about appellee telling appellants that the balance due on the debt was $15,426.16 before appellants bought the land from Countryman.

We cannot agree that the mortgage was not in default when appellants bought the property subject to the mortgage, and we are convinced that appellants were not planning to put in gas pumps and operate a filling station on the premises.

We find no reversible error.

Affirmed.

LAWSON, SIMPSON, HARWOOD and MADDOX, JJ., concur.